National Life Ins. Co. v. The Title Guar. & Sur. Co., 185 Ill. App. 221.

the view of deceased was obstructed by the southbound car and that the northbound car was running at a high rate of speed.

2.  STREET RAILROADS, § 94*—*right of pedestrian to rely on care of company.*  A pedestrian in attempting to cross street car tracks around the rear of a car which had stopped to receive passengers has a right to presume and to rely to some extent, at least, upon the presumption that a car coming from the opposite direction would not approach without warning.

3.  STREET RAILROADS, § 95*—*effect of failure to stop, look and listen.*  Mere failure of a person to stop, look and listen as he approaches a railroad crossing is not necessarily negligence on his part, as a matter of law, and whether such failure is negligence, in fact, depends upon the facts and circumstances surrounding the accident.

---

**National Life Insurance Company of the United States of America, Appellee, v. The Title Guaranty & Surety Company, Appellant.**

**Gen. No. 18,880.   (Not to be reported in full.)**

Appeal from the Municipal Court of Chicago; the Hon. FREDERICK L. FAKE, JR., Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1912.  Affirmed.  Opinion filed March 5, 1914.

## Statement of the Case.

Action by National Life Insurance Company of the United States of America against The Title Guaranty and Surety Company upon a fidelity bond in which defendant agreed to reimburse plaintiff for "all loss directly occasioned by larceny or embezzlement" on the part of one Burt H. Hopkins, a general agent of plaintiff, in connection with the duties of his office or position "as the same have been stated in writing by the employer to the company."  Defendant contended that the loss claimed by plaintiff, if occasioned by larceny or embezzlement on the part of Hopkins, did not arise "in connection with the duties of his office or posi-

222    APPELLATE COURTS OF ILLINOIS.

National Life Ins. Co. v. The Title Guar. & Sur. Co., 185 Ill. App. 221.

tion;'' that Hopkins' duties as general agent were specifically defined in a contract entered into before the execution of the bond in suit, his duties as so defined not including the collection of premiums other than ''first year's premiums,'' and that the only loss proved was the amount of renewal premiums which Hopkins collected and failed to turn over to defendant. At the time of the application for the bond plaintiff was required to answer a list of questions, among which were the following:

''4 (a)   How long have you known the applicant? About two months.   (c)   How long has he been in your employ?   Contract dated 6-15-1910.

6 (a)    What will be the title of applicant's position?   General Agent.   (b)   Explain fully his duties in connection therewith. *Collecting* premiums, appointing agents and soliciting.''

It was stipulated that ''the above answers are to be taken as conditions precedent and as a basis of the said bond applied for.'' Hopkins was permitted to collect premiums other than first year's premiums, and there was evidence to the effect this was done in pursuance of an oral agreement entered into after the execution of the written contract, but there was no evidence that defendant had knowledge of the provisions of the written contract at the time of the execution of the bond.   The written contract referred to contained the following provisions:

''The General Agent shall not receive any moneys due or to become due to the Company unless authorized in writing, *or* in exchange for conditional receipts to be furnished by the Company, *or* on policies or renewal receipts signed by the President, Vice-President or Secretary, *sent to him for collection.*''

From a judgment for plaintiff for $2,258.41, defendant appeals.

SHERIFF, DENT, DOBYNS & FREEMAN, for appellant.

L. A. STEBBINS, for appellee.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

## Abstract of the Decision.

1. INDEMNITY, § 11*—*when defalcation arises in performance of duties of office.* In an action on a fidelity bond given to protect an insurance company against embezzlement by its general agent, the contract between the agent and his employer was construed as authorizing the former to collect renewal premiums, and the embezzlement of same accordingly arose "in connection with the duties of his office or position" as required by the terms of the bond.

2. INDEMNITY, § 11*—*when defalcation with felonious intent.* Where the officers of an insurance company on declaring the accounts of a general agent discovered a shortage, which was admitted by the agent, who stated that the amount of the admitted shortage covered all collections up to the time of the examination, whereas the actual collections were two thousand dollars in excess of that amount, it was *held* that a felonious intent on the part of the agent was shown, within a fidelity policy protecting the company against larceny or embezzlement on the part of the company.

3. INDEMNITY, § 12*—*what not an extension of time of defaulter.* In an action on a fidelity bond, a finding that plaintiff had not given an employe, guilty of embezzlement, an extension of the time within which to pay the amount of his defalcation was *held* to be sustained by the evidence, the employe having given plaintiff a chattel mortgage which fixed no time for payment, no consideration therefor having been shown, and the testimony of the employe's wife that she refused to sign the mortgage until plaintiff's agent promised that six months' time would be allowed for payment being denied by the agent.

4. INDEMNITY, § 12*—*when duties of employe not increased.* In an action on a fidelity bond given to protect an insurance company against defalcation by a general agent, it was *held* that an oral contract subsequent to the written contract of employment did not operate to increase the agent's duties without the consent of the surety company, because he was thereby permitted to collect other than first year's premiums, the original contract being construed as giving him that authority.

*See **Illinois Notes Digest**, Vols. **XI** to **XV**, same topic and section number.